IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERPARK INCORPORATED, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEAMSTERS LOCAL UNION NO. 727 )<br>HEALTH AND WELFARE FUND, )<br>TEAMSTERS LOCAL UNION NO. 727 )<br>PENSION FUND, TEAMSTERS LOCAL )<br>UNION NO. 727 LEGAL AND )<br>EDUCATIONAL ASSISTANCE FUND, )<br>JOHN COLI, BECKY STRZECHOWSKI,)<br>THOMAS J. MORIARTY, and CARL )<br>TOMINBERG, )<br>)<br>Defendants. ) | No. 04 C 1176 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff InterPark Incorporated's ("InterPark") motion for partial summary judgment. For the reasons stated below, we grant InterPark's motion for partial summary judgment.

1

## BACKGROUND

InterPark employs individuals at parking facilities and valet service locations in Illinois. InterPark, on July 1, 2000 and November 1, 2001 respectively, entered into two collective bargaining agreements with the Teamsters Local Union No. 727 ("Union"). The July 1, 2000 collective bargaining agreement ("Valet Agreement") covers InterPark employees who work at locations that have no on-site parking facilities. The November 1, 2001 collective bargaining agreement ("Commercial Agreement") covers InterPark employees who work at locations that have on-site parking facilities. InterPark employees classified under the Valet Agreement are only eligible for limited Union health benefits, while InterPark employees classified under the Commercial Agreement are eligible for Union health, pension, education, and legal benefits. Based upon the number of Union benefits available to InterPark employees under each collective bargaining agreement, InterPark is required to pay monthly contributions to the Union's employee benefit and pension plans ("Funds"). Since the Valet Agreement offers only limited benefits, the monthly contribution rate for InterPark employees classified under the Valet Agreement is significantly lower than the monthly contribution rate for InterPark employees classified under the Commercial Agreement. The Funds, which are comprised of a "Health & Welfare Fund", "Pension Fund", and "Legal and Educational Fund," are all multiple employer plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (Def.'s Resp. P's R. 56.1 # 2,3,4).

In May of 2003, InterPark maintains that it became aware that it had

2

incorrectly classified 37 InterPark employees as employees under the Commercial Agreement, when in fact such employees should have been classified as employees under the Valet Agreement. As a result, InterPark alleges that between August of 2002 and May of 2003 it mistakenly submitted contribution overpayments to the Funds on behalf of the 37 InterPark employees at the Commercial Agreement contribution rate, instead of the Valet Agreement contribution rate. InterPark has requested a refund of the contribution overpayments from the Funds and the trustees of the Funds ("Defendants") on several occasions prior to the filing of the instant action. Defendants, however, have refused to return any contributions to InterPark. In InterPark's first amended complaint, InterPark sets forth one federal common law claim for restitution.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence

of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

InterPark claims that it is entitled to be refunded for the contribution overpayments it mistakenly made to the Funds between August of 2002 and May of 2003. An employer who alleges that it has mistakenly paid contributions to an employee benefit or pension plan governed by ERISA, may "seek recovery of the disputed sum as a matter of federal common law" in an action for "restitution." *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America*, 998 F.2d 509, 512-13 (7th Cir. 1993). However, an employer who brings such an

4

"equitable" action is not entitled to be refunded upon a mere showing that it "contributed more than was required" under an ERISA plan. *Id.* at 513. Rather, the district court, in addition to determining that overpayments were in fact paid to an ERISA plan, must also consider whether the party who received the overpayments would actually "be unjustly enriched if recovery" of the overpayments was denied." *See id.*(stating that the district court must determine whether "equity demands" a "refund" of the contributions.)

I. Contribution Overpayments

In InterPark's partial motion for summary judgment, InterPark argues that it mistakenly paid $77,128.00 in contribution overpayments to the Funds when it mistakenly classified 37 InterPark employees as being covered under the Commercial Agreement, when in fact such employees were covered under the Valet Agreement. (Pl.'s Reply 2 n. 2; Pl.'s Ex. 18). Defendants admit, pursuant to Rule 56.1, that InterPark did make contributions on behalf of the 37 InterPark employees at the higher Commercial Agreement rate between August of 2002 and May of 2003. (Def.'s Resp. P.'s R. 56.1 # 43) However, Defendants argue that "disputes of material fact dominate" as to whether InterPark's contributions were actually overpayments. (Def.'s Opp'n 6).

In order to defeat a plaintiff's motion for summary judgment and proceed onward to trial, a defendant is required to point to sufficient evidence that would

enable a reasonable trier of fact to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants have failed to point to any disputed evidence regarding InterPark's contributions to the Funds between August of 2002 and May of 2003. Instead, Defendants have attempted to avoid summary judgement by pointing to issues and evidence outside of InterPark's instant claim for restitution. (Def.'s Ex. Vol. 1-4). For example, Defendants point to InterPark employees and former InterPark contribution payments to the Funds that are not even at issue in the instant action. (Def's Opp'n 6-8). In addition, Defendants argue that because InterPark allegedly has a "history of misclassifying employees" and has allegedly had "numerous grievances" filed against it by the Union, summary judgement in favor of InterPark in the instant action should therefore be denied. (Def's Opp'n 8-9). Defendants also point to volumes of reports and documents that have no bearing on whether InterPark made contribution overpayments to the Funds. (Def.'s Ex. Vol. 1-4). In the instant action, Defendants are not entitled to go before the trier of fact and ask the trier of fact to speculate, in the absence of evidence, based on issues and other InterPark employees that are not even a part of InterPark's instant restitution claim. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(a "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."). Accordingly, Defendants' arguments in this regard are without merit and do not raise a genuine issue of material fact to preclude InterPark's motion for partial summary judgment.

InterPark also indicates that Defendants have refused to sufficiently respond to InterPark's Rule 56.1 statement of facts in regards to whether InterPark made contribution overpayments to the Funds. (Pl.'s Reply 4-6; Pl.'s Rule 56.1 # 42,43). Pursuant to Rule 56.1, when a party files a motion for summary judgment each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument."). Pursuant to Rule 56.1 any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating in addition

that a local rule pertaining to summary judgment "is more than a technicality"). Further, the Seventh Circuit has held that "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance.").

In the instant action, InterPark submitted a summary report ("Report") that provides such information, in that it includes the names of the 37 InterPark employees InterPark claims were covered under the Valet Agreement between August of 2002 and May of 2003. (Pl.'s Ex. 18). In addition, the InterPark Report lists the specific monthly contribution payment's InterPark contends it paid to the Funds when it mistakenly classified such employees under the Commercial Agreement. (Pl.'s Ex. 18). However, Defendants repeatedly fail to provide direct responses to InterPark's statement of material facts and instead offer evasive answers. For example, according to Defendants, InterPark is required to report to the Funds "the names of each employee that performed work pursuant to the collective bargaining agreements in a particular month along with the contribution amounts." (Def.'s R. 56.1 # 11). Although Defendants admit, pursuant to Rule 56.1, that InterPark did make contributions on behalf of the 37 employees listed in InterPark's Report at the Commercial Agreement rate between August of 2002 and May of 2003, Defendants evasively avoid admitting or denying whether such contributions were overpayments. (Def.'s Opp'n 9; Def.'s Resp. P.'s R. 56.1 #'s 42, 43). Specifically,

Defendants refuse to sufficiently admit or deny InterPark's Rule 56.1 statement of fact # 42, which states that InterPark's Report "fairly and accurately summarizes the amount of contribution overpayments made by InterPark to the [Funds] on behalf of the" 37 employees listed in InterPark's Report. (Def's Resp. Pl.'s R. 56.1 # 42). Instead, Defendants state that they "[d]eny conclusion that figures represent overpayments" and then cite to 94 of Defendants' 147 Rule 56.1 statement of facts. (Def.'s Resp. P.'s R. 56.1 # 42). As is indicated above, Rule 56.1 should be limited to the material facts. Rule 56.1 is intended to assist the court by ensuring that the material facts are isolated and the record is clarified so that the court can determine if there are genuinely disputed facts. Clearly, Defendants' statement in response to InterPark's Rule 56.1 statement of fact # 42 does little to clarify the record for the court and is not in compliance with Rule 56.1. Defendants expect the court to "scour the record" and 94 of Defendants' 147 statement of facts to determine an issue that should be very clear to Defendants, namely whether or not InterPark overpaid the Funds. *Waldridge*, 24 F.3d at 920, 922; (Def.'s Resp. P.'s R. 56.1 # 42). Since Defendants have failed to sufficiently admit or deny InterPark's Rule 56.1 statement of fact # 42, such statement is deemed admitted pursuant to Rule 56.1. *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003).

InterPark's Report reflects that InterPark paid $77,128.00 in contribution payments to the Funds on behalf of the 37 employees between August of 2002 and May of 2003. (Pl.'s Ex. 18). InterPark's Report further indicates that the $77,128.00

9

in contribution payments to the Funds was based on the Commercial Agreement contribution rate. (Pl.'s Ex.'s 18). Defendants have not pointed to sufficient evidence to indicate that the 37 InterPark employees were ever covered by the Commercial Agreement between August of 2002 and May of 2003. Further, Defendants have failed to point to any disputed evidence regarding InterPark's Report. Based on Defendants' admission that InterPark's Report fairly and accurately summarizes the amount of contribution overpayments made by InterPark to the Funds, it is undisputed that InterPark made $77,128.00 in contribution overpayments to the Funds between August of 2002 and May of 2003. (Def.'s Resp. P.'s R. 56.1 # 42; Pl.'s Ex. 18).

II. Unjust Enrichment

InterPark claims that disputed facts exist as to whether 2 of the 37 InterPark employees in InterPark's Report received benefits from the Funds. (Pl.'s Reply 9). Specifically, InterPark states that it is not seeking summary judgment for contribution payments made on behalf of InterPark employees Andom Maru ("Mara") and Olumuyiwa Olawumi ("Olawumi") since disputed facts exist that will have to resolved at trial as to whether these two individuals received benefits under the Commercial Agreement from the Funds. (Pl.'s Reply 9-10). InterPark therefore argues that it only seeks partial summary judgment in the amount of $71,324.00 for the contribution overpayments made on behalf of the other 35 InterPark employees listed in InterPark's Report. (Pl.'s Reply 9-10).

It is well settled that "restitution is a device to avoid unjust enrichment." *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Pathology Laboratories of Arkansas, P.A.*, 71 F.3d 1251, 1254 (7th Cir. 1995). Further, it is undisputed that InterPark employees classified under the Valet Agreement are only eligible for limited Union health benefits, while InterPark employees classified under the Commercial Agreement are eligible for Union health, pension, education, and legal benefits. (Pl.'s Ex.'s 8-9; Pl.'s Ex.'s 18). The court has considered Defendants' arguments and reviewed the volumes of documentation submitted by Defendants. (Def.'s Ex. Vol. 1-4). Defendants have failed to point to sufficient evidence to indicate that the 35 employees listed in InterPark's Report ever received any of the benefits offered under the Commercial Agreement. Defendants' arguments are premised on speculation involving unsubstantiated hypotheticals as to how the 35 InterPark employees may have received benefits under the Commercial Agreement. (Def.'s Opp'n 9-11). For example, Defendants argue that some of InterPark's employees "would have become eligible for" benefits offered under the Commercial Agreement had such employees "worked the required number of months under the Commercial Agreement." (Def.'s Opp'n 11).

In conclusion, the undisputed evidence reveals that InterPark mistakenly made contribution payments at the Commercial Agreement rate to the Funds on behalf of 37 of its employees between August of 2002 and May of 2003. InterPark paid the Funds $71,324.00 in contribution overpayments on behalf of 35 of the 37 InterPark employees identified in InterPark's Report. (Pl.'s Ex. 18). Defendants have failed to

point to sufficient evidence to indicate that these 35 employees received any of the benefits offered in the Commercial Agreement. If InterPark is not permitted to recover the $71,324.00 in mistaken contribution overpayments it paid to the Funds, Defendants would be "unjustly enriched." *UIU*, 998 F.2d at 513 (7th Cir. 1993). Accordingly, "equity demands" that InterPark be refunded for the $71,324.00 in mistaken contribution overpayments it made to the Funds. *Id.* Therefore, we grant InterPark's motion for partial summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant InterPark's motion for partial summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 13, 2005